FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT

JAN 1 6 2008

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

DENNIS GREEN,

             Petitioner,

  v.

TERESA A. SCHWARTZ, Warden,

             Respondent.

No.  CV 06-4456-ODW (AGR)

ORDER ADOPTING MAGISTRATE
JUDGE'S REPORT AND
RECOMMENDATION

Pursuant 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the Petition, all the records and files herein, the Magistrate Judge's Report and Recommendation, and the objections to the Report and Recommendation that have been filed herein.  Having made a de novo determination, the Court agrees with the recommendation of the Magistrate Judge.

IT IS ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: _____1-15-2008_____

_____
OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  DENNIS GREEN, | NO. CV 06-4456-ODW (AGR) |
| 12          Petitioner, | |
| 13              v. | |
| 14  TERESA A. SCHWARTZ, Warden, | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| 15          Respondent. | |
| 16 | |
| 17 | |

18          The Court submits this Report and Recommendation to the Honorable Otis

19   D. Wright II, United States District Judge, pursuant to 28 U.S.C. § 636 and

20   General Order No. 05-07 of the United States District Court for the Central District

21   of California.  For the reasons set forth below, the Magistrate Judge recommends

22   the Petition for Writ of Habeas Corpus be denied.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

# I.

## <u>SUMMARY OF PROCEEDINGS</u>

On August 3, 2001, a Los Angeles County Superior Court jury convicted Petitioner of second-degree robbery and grand theft person. (Petition at 2; Answer at 5.)  He admitted two prior serious-felony convictions.  (Answer at 5.) On September 2, 2001, Petitioner was sentenced to 35 years to life in prison. (Petition at 2.)  On April 21, 2003, the California Court of Appeal affirmed his conviction for robbery in an unpublished decision.  (Lodged Document "LD" 8.) However, the Court of Appeal reversed the conviction for grand theft because it was a lesser included offense of robbery, and remanded "to determine the truth of the prior conviction allegations and for resentencing." (*Id.* at 1, 11.)  On July 23, 2003, the California Supreme Court denied review without explanation.  (LD 12.)

On October 21, 2003, on remand, the trial court found Petitioner's two prior convictions to be true and again sentenced to 35 years to life (25 years to life on the robbery plus two 5-year enhancements for each of the priors).  (LD 3 at 6, 9.) On January 20, 2005, the California Court of Appeal affirmed in a second unpublished decision.  (LD 20.)  On April 13, 2005, the California Supreme Court denied review without explanation.  (LD 26.)

On July 17, 2006, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court in which he raised eight grounds:  (1) the prosecutor unconstitutionally exercised a peremptory challenge to exclude a black woman from the jury; (2) ineffective assistance of counsel if counsel's failure to cite to *Batson* eliminated Petitioner's ability to pursue the *Batson* claim; (3) failure to instruct the jury regarding prosecution's insufficient theory of force; (4) Petitioner's 35 year sentence was cruel and unusual punishment; (5) Petitioner's waiver of a jury trial on his priors at his first trial did not carry over to the hearing on remand; (6) Petitioner's Sixth Amendment rights were violated when he was denied a jury trial on his priors after remand; (7) ineffective

1   assistance of counsel for failing to object to the trial court's reliance on the

2   hearsay in the probation report; and (8) the trial court's giving of CALJIC No.

3   17.41.1 violated Petitioner's right to a jury trial.  (Petition at 5-6E.)  On November

4   30, 2006, Respondent filed an answer, admitting timeliness and exhaustion.

5   Petitioner filed a reply on April 25, 2007.

6          This matter was taken under submission and is now ready for decision.

7                                          II.

8                          **STATEMENT OF FACTS**

9          Below are the facts set forth in the first California Court of Appeal decision

10  on direct review.  To the extent an evaluation of Petitioner's claims for relief

11  depends on an examination of the record, the Court has made an independent

12  evaluation of the record specific to Petitioner's claims for relief.

13         Francisco Olvera was waiting for a bus at 4:00 a.m. after finishing his shift

14         at work. Green approached and requested money from Olvera. Olvera

15         refused and Green displayed a small black tube. When Olvera bent over to

16         observe the tube, Green took Olvera's eyeglasses from Olvera's face. The

17         eyeglasses were worth $350. Olvera told Green to return his glasses and

18         Green said he would return the eyeglasses if Olvera gave Green his watch.

19         Olvera gave Green his watch and a small amount of cash but Green kept

20         the eyeglasses. When Olvera flagged down a passing police car, Green

21         threw the eyeglasses and watch into a trash can. Olvera retrieved his

22         eyeglasses from the trash can. One of the lenses had fallen out and Olvera

23         found the lens in the trash can.

24  (LD 8 at 2.)

25                                         III.

26                          **STANDARD OF REVIEW**

27         A federal court may not grant a petition for writ of habeas corpus by a

28  person in state custody with respect to any claim that was adjudicated on the

merits in state court unless it (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Woodford v. Visciotti*, 537 U.S. 19, 21, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam).

"'[C]learly established Federal law' . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court rendered its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). A state court's decision is "contrary to" clearly established Federal law if (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002). A state court's decision cannot be contrary to clearly established Federal law if there is a "lack of holdings from" the Supreme Court on a particular issue. *Carey v. Musladin*, 127 S. Ct. 649, 654, 166 L. Ed. 2d 482 (2006).

Under the "unreasonable application" prong of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Lockyer*, 538 U.S. at 76; *see also Woodford*, 537 U.S. at 24-26 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts).

A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle . . . to a new context where it should not apply, or unreasonably refuses to extend

4

1   that principle to a new context where it should apply." *Williams v. Taylor*, 529

2   U.S. 362, 407, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

3        "In order for a federal court to find a state court's application of [Supreme

4   Court] precedent 'unreasonable,' the state court's decision must have been more

5   than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct.

6   2527, 156 L. Ed. 2d 471 (2003) (citation omitted).  "The state court's application

7   must have been 'objectively unreasonable.'" *Id.* (citation omitted); *see also Clark

8   v. Murphy*, 331 F.3d 1062, 1068 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003).

9        "Factual determinations by state courts are presumed correct absent clear

10  and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated

11  on the merits in a state court and based on a factual determination will not be

12  overturned on factual grounds unless objectively unreasonable in light of the

13  evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v.

14  Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *see also

15  Mitleider v. Hall*, 391 F.3d 1039, 1046 (9th Cir. 2004), *cert. denied*, 545 U.S. 1143

16  (2005).

17        In applying these standards, this Court looks to the last reasoned State

18  court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006).  To the

19  extent no such reasoned opinion exists, as when a state court rejected a claim in

20  an unreasoned order, this Court must conduct an independent review to

21  determine whether the decisions were contrary to, or involved an unreasonable

22  application of, "clearly established" Supreme Court precedent. *Delgado v. Lewis*,

23  223 F.3d 976, 982 (9th Cir. 2000).  If the state court declined to decide a federal

24  constitutional claim on the merits, this Court must consider that claim under a *de

25  novo* standard of review rather than the more deferential "independent review" of

26  unexplained decisions on the merits authorized by *Delgado*. *Lewis v. Mayle*, 391

27  F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim

28  state court did not reach on the merits).

## IV.

## DISCUSSION

### A.   GROUND ONE: *Batson* Challenge

*Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the seminal federal case on jury challenges, is the "clearly established Federal law" for this ground. A *Batson* challenge "requires a three-step inquiry." *Rice v. Collins*, 546 U.S. 333, 338, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006). First, the defendant must make "a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race." *Id.* "Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question." *Id.* The prosecutor's explanation has to be "comprehensible," but it doesn't have to be "'persuasive, or even plausible' so long as [it] is not inherently discriminatory." *Id.* (quoting from *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (per curiam)). "Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination." *Rice*, 546 U.S. at 338. In the third step, the "'ultimate burden of persuasion'" remains with the defendant. *Id.* (quoting from *Purkett*, 514 U.S. at 768). As *Rice* explains, the petition may be granted "only . . . if it was unreasonable to credit the prosecutor's race-neutral explanations." *Id.*

#### 1.   Jury Proceedings

Petitioner objects only to one excused juror, a black woman.[1] (Petition at 5A.) Juror No. 14 described herself as a divorced clerk typist with three children, one minor child and two adult children. (*Id.* at 76.) She had been on one criminal jury before, but the charges were dropped before the conclusion of the trial. (*Id.*) ///

---

[1]   The Court of Appeal refers to her by her initials, C.D. (LD 8 at 4.) The record refers to her initially by her full name and then as Juror No. 14. (LD 3 at 75.) The Court will refer to her as Juror No. 14.

1  Her late ex-husband was a paramedic for the Los Angeles County Fire

2  Department. (*Id.* at 77.)

3       The trial court asked the jurors whether any of them or anyone close to

4  them "had any training or experience in law enforcement or the legal profession?

5  Police, attorney paralegal." (*Id.* at 84.)  Juror No. 14 said she had a friend who

6  used to work for the district attorney's office as an investigator for 15-20 years but

7  was now retired. (*Id.* at 85.)  She said she never talked to him about his

8  experiences as an investigator.[2]  (*Id.*)

9       The trial court also asked the prospective jurors, "Any other reasons we

10  haven't talked about where you feel that you could not be a fair juror in this case

11  or there would be some difficulty hearing a case like this?" (*Id.* at 89.)  Juror No.

12  14 responded: "Yes.  I don't know – I won't have any difficulty, but a lawyer came

13  in earlier, very early that I personally know and have retained, and I don't know if

14  he has anything to do with this." (*Id.*)  The trial court responded by pointing out

15  that the only attorneys involved in the case were right there. (*Id.* at 90.)

16       Defense counsel made a *Wheeler*[3] objection during the voir dire. (*Id.* at

17  95.)  The trial court found that of the five jurors excused by the prosecutor, three

18  were black. (*Id.* at 96.)  The court found no prima facie case for one of the black

19  jurors but did for two, including Juror No. 14, and asked the prosecutor to explain

20  his reasons for excusing those two. (*Id.*)  The following  discussion was then

21  reported:

22       PROSECUTOR:  As far as [Juror No. 14], I thought some of

23       her answers – I mean she didn't respond to your questions, like the

24       last one was entirely inappropriate.  The question by the court was

25

26       [2]  The court reporter apparently incorrectly reported Juror No. 14 as Juror
27  No. 13. (*Id.*)

28       [3]  *People v. Wheeler*, 22 Cal. 3d 258, 148 Cal. Rptr. 890 (1978) is
   California's counterpart to *Batson*.

1    have you had any negative experiences with the police and she

2    responded by coming up with, "Well, I have retained – I saw a lawyer

3    that I had retained." I didn't see the relevancy. And I just, you know,

4    that makes me wonder about that, the reaction to a question. I think

5    it's an inappropriate response.

6          THE COURT: All right. Anything else?

7          DEFENSE COUNSEL: Well, I think that I just want to say I

8    think that was a response to whether any contact of law enforcement

9    officer, she was just trying to clarify to the court that she had seen

10   someone that she knew and wanted to make sure she wasn't doing

11   anything wrong. I don't think – it doesn't appear to me to be a very

12   valid reason.

13         PROSECUTOR: I just point out. I mean, I just think it's – I

14   didn't see the relevance of it. Her mind works in that manner, I don't

15   think it's appropriate at all.

16         THE COURT: All right. I will find that the reasons stated by

17   the people are acceptable and are based on factors other than race.

18   * * * [Juror No. 14] while as I recall she answered the question about

19   the lawyer was an open-ended inquiry that I made. It certainly

20   should have been obvious to her or anybody else that the lawyer's

21   no longer in the courtroom and doesn't have anything to do with this

22   case. So while I appreciate that she was bringing that out, it is an

23   unusual fact that I think justifies the exercise of the peremptory so

24   the motion is denied.

25   (*Id.* at 97-98.)

26         **2.    Discussion**

27         The 2003 California Court of Appeal decision, which is the last reasoned

28   decision under *Davis*, applied the correct legal framework as outlined above. (LD

8 at 4.)  The trial court found a prima facie case for Juror No. 14.  It requested the prosecutor to state his reasons.  The prosecutor did so but attributed Juror No. 14's response to the wrong question, which the Court of Appeal noted.  (LD 8 at 4.)  According to the Court of Appeal, "[w]hen the prosecutor's stated reason is not supported by the record, the trial court must make a 'sincere and reasoned attempt' to determine whether it is a pretext for group bias."  (*Id.* at 5 (quoting from *People v. Silva*, 25 Cal. 4th 345, 385-86, 106 Cal. Rptr. 2d 93 (2001).)  The Court of Appeal found that the trial court "made a sincere and reasoned evaluation of the prosecutor's reason for challenging [Juror No. 14].  The court understood the error concerning the question and evaluated Juror [No. 14]'s answer and the prosecutor's reason in light of the correct question.  The prosecutor's explanation revealed a belief that Juror [No. 14] might have trouble understanding the evidence or law, and the court shared this belief."  (*Id.*)

Moreover, the Court of Appeal found that jurors "may be excused based on 'hunches' and arbitrary reasons, provided the reasons are not based on group bias.  Also a trial court's observations may be critical to separating bona fide reasons from sham excuses because the court is in the best position to evaluate the demeanor of the prospective juror and the credibility of counsel in exercising peremptory challenges."  (*Id.* (citations omitted).)

The Court of Appeal's decision was not contrary to United States Supreme Court law.  Deference is given to the trial court's factual determinations as to "discriminatory intent."  *Hernandez v. New York*, 500 U.S. 352, 364-65, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991).  "[T]he decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.  There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge."  *Id.* at 365.  Here, the trial court found that Juror No. 14's comment was an "unusual fact" and therefore the prosecutor's explanation was reasonable

1    and race-neutral. Petitioner's complaint is the prosecutor's explanation was

2    "unsupported by the record" and the court "impermissibly supplied a questionable

3    reason of its own for rejecting the juror." (Petition at 5A.)  First, the court did not

4    supply its own reason.  The prosecutor said Juror No. 14's comment was

5    irrelevant and inappropriate, which is similar to the trial court's description of

6    "unusual."  Second, the only way in which the prosecutor's explanation was

7    "unsupported by the record" was that the prosecutor was mistaken as to which

8    question Juror No. 14 was responding to.  It is true that a prosecutor's reason is

9    more vulnerable to attack when "the facts in the record are objectively contrary" to

10   what the prosecutor said (*McLain v. Prunty*, 217 F.3d 1209, 1221 (9th Cir. 2000)),

11   but those cases are based on very different kinds of contrary facts.  For example,

12   in *Johnson v. Vasquez*, 3 F.3d 1327, 1330 (9th Cir. 1993), *cert. denied sub nom.*

13   *Calderon v. Vasquez*, 511 U.S. 1085 (1994), the court found that the record

14   contradicted the prosecutor's reasons.  The prosecutor said that the juror had

15   worked for a defense attorney, that she was uneducated, that she had been

16   evasive in answering questions, and that her age was a problem. *Id.*  The juror

17   had not worked for a defense attorney but had worked for a family lawyer; there

18   was no evidence that the juror was uneducated, her answers were not evasive,

19   her answers "were unusually pithy and direct"; and there was nothing in the

20   transcript about the juror's age, nor whether the prosecutor thought she was too

21   young or too old. *Id.*  By contrast, here, the only thing contradicted by the record

22   is which question the prospective juror was responding to, not what the

23   prosecutor said the juror said.[4]

24         Thus, the trial court's conclusion that there was no evidence of intentional

25   discrimination, with which the Court of Appeal agreed, was not objectively

26   unreasonable.  Petitioner's claim fails.

27   _____

28       [4] Defense counsel, too, was incorrect as to which question Juror No. 14
     was responding to.  Only the trial court identified the right question.

1    **B.    GROUND TWO:  Conditional Ineffective Assistance**

2        If this Court refused to address his *Batson* claim on the merits because

3    Petitioner's trial counsel had cited to *Wheeler* but had failed to cite to *Batson*,

4    Petitioner would then argue that his trial counsel was ineffective for that failure.

5    Because the Court has in fact addressed the *Batson* claim on the merits, this

6    ground is moot.

7    **C.    GROUNDS THREE AND EIGHT:  Omission of Jury Instruction**

8    **and CALJIC No. 17.41.1**

9        "The only question . . . is 'whether [a jury] instruction by itself so infected

10   the entire trial that the resulting conviction violates due process." *Estelle v.*

11   *McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (quoting

12   *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)).

13   "[I]t must be established not merely that the instruction is undesirable, erroneous,

14   or even 'universally condemned,' but that it violated some [constitutional right].'"

15   *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431

16   (1974).  This standard requires that "the degree of prejudice resulting from

17   instruction error be evaluated in the total context of the events at trial."  United

18   States v. Frady, 456 U.S. 152, 169, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

19   "[W]e also bear in mind . . . that we 'have defined the category of infractions that

20   violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting

21   *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708

22   (1990)).  Here, Petitioner's "burden is especially heavy" because "[a]n omission,

23   or an incomplete instruction, is less likely to be prejudicial than a misstatement of

24   the law." *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d

25   203 (1977).

26       **1.    Ground Three**

27       According to the Petitioner, the prosecutor provided the jury with a legally

28   inadequate theory as a basis for conviction in arguing that it could find the

11

requisite force for robbery when Petitioner took the victim's glasses. (Petition at 6A (citing to LD 3 at 220 ("The defendant used force and took his glasses")).) Petitioner contends there "was no evidence that petitioner used any more force than necessary to remove Olvera's glasses." (Petition at 6A.) Thus, because it was unclear whether the jurors concluded Petitioner was guilty because of fear or a legally incorrect theory of force, his conviction for robbery was unconstitutional. (*Id.*)

According to the Court of Appeal, robbery must be "accomplished by means of force or fear." (LD 8 at 6.) The force required "must be a quantum more than that which is needed merely to take the property from the person of the victim." (*Id.* (citation and internal quotation marks omitted).) The court concluded that "[c]ontrary to [Petitioner's] assertion, the prosecution did not argue that the force used to take Olvera's eyeglasses was necessarily sufficient to establish robbery by force." (*Id.* at 7.) The court pointed to the following portion the prosecutor's oral argument:

> [Olvera] testified about the amount of force. Now that would be a
> question, a jury question. Was this grabbing of those glasses, was
> that sufficient force to constitute a robbery? That's your decision.
> And that's one of the main differences between the robbery and this
> grand theft person because the grand theft person, the big difference
> is no force used.

(*Id.*; LD 3 at 219-20.) Thus, the Court of Appeal found that the prosecutor's argument "does not propose an erroneous legal theory. It correctly informs the jury about the difference between grand theft and robbery, and that the amount of force used by Green and its sufficiency to establish robbery were factual questions for the jury." (LD 8 at 7.)

Petitioner's citation to *Griffin v. United States*, 502 U.S. 46, 59, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991) highlights the flaw in Plaintiff's claim. *Griffin*

1   contrasted a "legally inadequate theory" with a "factually inadequate theory,"

2   indicating, as Petitioner states (Petition at 6A), that jurors are not necessarily

3   capable of coping with a *legally* inadequate theory but are capable of dealing with

4   a *factually* inadequate theory. *Id.* at 59.  When the prosecutor argued that

5   Petitioner used force to remove the victim's glasses, he was stating his opinion as

6   to facts (which Petitioner may feel were insufficiently proved).  The prosecutor

7   was not positing a legal theory, inadequate or otherwise.  On the other hand, as

8   the Court of Appeal explained, when the prosecutor told the jury that it was up to

9   them to decide whether sufficient force was used to establish robbery, he was

10  stating a legal theory, and he was stating it correctly.  Thus, Petitioner's entire

11  premise that the prosecutor's statement was an inadequate legal theory is

12  incorrect, and the state court's decision was reasonable.

13          Petitioner's claim fails.

14                  **2.      Ground Eight**

15          CALJIC No. 17.41.1 provides:

16          The integrity of a trial requires that jurors, at all times during their

17          deliberations, conduct themselves as required by these instructions.

18          Accordingly, should it occur that any juror refuses to deliberate or

19          expresses an intention to disregard the law or to decide the case

20          based on penalty or punishment, or any other improper basis, it is

21          the obligation of the other jurors to immediately advise the Court of

22          the Situation.

23  (LD 1 at 42.)

24          Without authority, Petitioner argues that the above instruction violates his

25  federal right to a jury trial, "which includes the jury's power to nullify."

26          The California Court of Appeal cited to *People v. Engelman*, 28 Cal. 4th

27  436, 442-45, 121 Cal. Rptr. 862 (2002) for the proposition that the giving of the

28  instruction "does not infringe upon defendant's federal . . . constitutional right to a

                                          13

1    trial by jury."[5] (LD 8 at 10.) In addition, there was no prejudice as "[t]he jury

2    never reported a deadlock or any other difficulty in deliberations." (Id.)

3         Although the United States Supreme Court has never specifically

4    addressed this instruction,[6] its holdings strongly suggest that such an instruction

5    does not violate federal constitutional principles. See Lockett v. Ohio, 438 U.S.

6    586, 596-97, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) ("Nothing in Taylor,

7    however, suggests that the right to a representative jury includes the right to be

8    tried by jurors who have explicitly indicated an inability to follow the law and

9    instructions of the trial judge."); Morgan v. Illinois, 504 U.S. 719, 729-30, 112 S.

10   Ct. 2222, 119 L. Ed. 2d 492 (1992) (a judge must remove prospective jurors who

11   fail to follow the judge's instructions).

12        Therefore, in the absence of any Supreme Court authority, the state court's

13   decision was not contrary to, nor an unreasonable application of, clearly

14   established federal law. The claim fails. See Carey, 127 S. Ct. at 654.

15   **D.    GROUND FOUR: <u>Cruel and Unusual Punishment</u>**

16        In evaluating an Eighth Amendment claim challenging a sentence for a

17   term of years, "[a] gross disproportionality principle" applies. Lockyer v. Andrade,

18   538 U.S. 63, 72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The "precise

19   contours" of the principle are "unclear"; however, they apply "only in the

20   'exceedingly rare' and 'extreme' case." Id. at 73. "The gross proportionality

21   principle reserves a constitutional violation for only the extraordinary case." Id. at

22   77. In Lockyer, the petitioner's third strike was based on theft of about $150

---

24   [5] Engelman nonetheless directed trial courts to cease giving the instruction
25   in the future because it "creates a risk to the proper functioning of jury
     deliberations." Id. at 449.

26   [6] In 2004, the Ninth Circuit found that "no Supreme Court precedent holds
     that an antinullification instruction, such as CALJIC 17.41.1, violates due process"
27   and thus a "California appellate court did not unreasonably apply Estelle in
     upholding the constitutionality of CALJIC 17.41.1" Brewer v. Hall, 378 F.3d 952,
28   956 (9th Cir.), cert. denied, 543 U.S. 1037 (2004). Petitioner points the Court to
     no contrary authority.

1   worth of videotapes. *Lockyer*, 583 U.S. at 66.  The first and second strikes were

2   first-degree residential burglaries. *Id.* at 68.  On collateral review, the court found

3   that the petitioner was not entitled to relief based on the Eighth Amendment.

4         In *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108

5   (2003), on direct review, the Supreme Court again upheld California's Three

6   Strikes Law against an Eighth Amendment claim.  Ewing's third strike was

7   stealing golf clubs with a value of about $1,200.  *Id.* at 17-18.  His earlier strikes

8   consisted of three burglaries and a robbery. *Id.* at 19.  As the court explained,

9   "When the California Legislature enacted the three strikes law, it made a

10  judgment that protecting the public safety requires incapacitating criminals who

11  have already been convicted of at least one serious or violent crime.  Nothing in

12  the Eighth amendment prohibits California from making that choice." *Id.* at 25.

13        The California Court of Appeal concluded that Petitioner's sentence did not

14  violate the Eighth Amendment's prohibition on cruel and unusual punishments.

15  (LD 8 at 10.)  Petitioner had "an extensive criminal record, including several

16  robberies and a burglary." (*Id.*)

17        Petitioner attempts to distinguish his record from that of Ewing's, but the

18  two cases are similar.  Petitioner concedes that his "adult felony record is

19  extensive." (Petition at 6B.)  Petitioner argues that his priors are "remote" in time,

20  the last occurring in 1994. (*Id.*)  His last violation of parole occurred on January

21  8, 2001, a few months before robbing Olvera. (LD 1 at 69.)  Contrary to his

22  assertions, Petitioner's situation is not that different from Ewing's.  His priors are

23  not much more remote than Ewing's.  Ewing committed the "current" offense in

24  2000. *Ewing*, 538 U.S. at 19.  His most recent offense before that was in 1993,

25  seven years earlier. *Id.*  During that time, Ewing was in prison. *Id.*  He committed

26  the "current" crime 10 months after he was paroled. *Id.*  Petitioner was convicted

27  in 2001, and his most recent offense was also seven years earlier, in 1994.

28  ///

1    Petitioner, too, committed his "current" offense not long after he was paroled.

2    Both men had extensive criminal records.

3         The California Court of Appeal's decision was not unreasonable.

4    Petitioner's claim fails.

5    **E.    GROUNDS FIVE AND SIX:** <u>**Jury Trial Waiver on Prior**</u>

6                               <u>**Convictions**</u>

7         "Other than the fact of a prior conviction, any fact that increases the penalty

8    for a crime beyond the prescribed statutory maximum must be submitted to a

9    jury." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d

10   435 (2000); *see also United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738,

11   160 L. Ed. 2d 621 (2005) ("we reaffirm our holding in *Apprendi*: Any fact (other

12   than a prior conviction) which is necessary to support a sentence exceeding the

13   maximum authorized by the facts established by a plea of guilty or a jury verdict

14   must be admitted by the defendant or proved to a jury beyond a reasonable

15   doubt").

16        After Petitioner was convicted, he waived his right to a jury trial on his prior

17   convictions. (LD 3 at 251-52.) At a subsequent hearing, Petitioner admitted two

18   priors. (LD 1 at 56; LD 4 at 4-6.) On appeal, the court found that "Green

19   concedes waiving a jury trial of allegations that he suffered two prior serious or

20   violent felony convictions." (LD 8 at 2-3.) However, the California Court of

21   Appeal found that Petitioner had not been asked whether he also waived his right

22   to confront witnesses and his privilege against self-incrimination, nor had he

23   waived those rights. (*Id.* at 3.) The court therefore remanded to determine the

24   truth of the priors and for resentencing. (*Id.* at 11.) On remand, Petitioner

25   requested a jury trial on the priors, which the trial court denied as it found there

26   had already been a "full waiver" of a jury trial. (LD 3 at 2.)

27        **1.    Ground Five**

28        In Ground Five, Petitioner argues that his initial waiver "does not carry over

16

1  to a retrial." (Petition at 6B-6C.) The California Court of Appeal addressed

2  Ground Five, but only on state law grounds. (LD 20 at 5-6.)

3      The California Court of Appeal correctly concluded that there is no federal

4  constitutional right to a jury trial for prior convictions. (LD 20 at 6.) Nor does

5  there appear to be any Supreme Court authority for the proposition that a waiver

6  does not apply after remand.[7]

7      Here, Petitioner's waiver was purely a state law question and not suitable

8  for habeas review. *See Estelle*, 502 U.S. at 67-68 ("[W]e reemphasize that it is

9  not the province of a federal habeas court to reexamine state-court

10  determinations on state-law questions. In conducting habeas review, a federal

11  court is limited to deciding whether a conviction violated the Constitution, laws, or

12  treaties of the United States.").

13      Nonetheless, Petitioner argues that the state court's conclusion was an

14  "arbitrary deprivation of state law entitlement" and thus a violation of federal due

15  process, citing to *Hicks v. Oklahoma*, 447 U.S. 343, 100 S. Ct. 2227, 65 L. Ed. 2d

16  175 (1980). (Petition at 6C.) In *Hicks*, the defendant was charged with heroin

17  distribution. In accordance with a state habitual offender statute, the jury was

18  instructed that if they found the defendant guilty, they must impose a prison term

19  of 40 years, which they did. *Id.* at 344-45. Subsequent to the defendant's

20  conviction but during his direct appeal, the state courts declared the habitual

21  offender statute to be unconstitutional. The defendant argued on appeal that his

22  conviction should be reversed, but the state appellate court said he was not

23  ─────────────────────

24      [7] Petitioner's citations to two Sixth Circuit non-habeas cases are
    inapposite. Both cases involved the federal constitutional right to a jury trial on

25  the criminal offense. *United States v. Lee*, 539 F.2d 606 (6th Cir. 1976) (consent
    to trial before a magistrate judge may be withdrawn); and *United States v. Groth*,

26  682 F.2d 578 (6th Cir. 1982) (waiver of a jury trial may be withdrawn before retrial
    of the criminal offense after an appeal). Even then, notice of withdrawal of

27  consent must be timely. When, as here, notice is given on the day of the
    proceeding at issue, notice is not timely. *United States v. Mortensen*, 860 F.2d

28  948, 950 (9th Cir. 1988), *cert. denied*, 490 U.S. 1036 (1989).

17

prejudiced because "his sentence was within the range of punishment that could

have been imposed in any event." *Id.* at 345.  The Supreme Court held that the

state's conclusion under state law rested "on the frail conjecture that a jury *might*

have imposed a sentence equally as harsh . . . [and that] [s]uch an arbitrary

disregard of the petitioner's right to liberty is a denial of due process of law." *Id.*

at 346 (emphasis in original) (footnote omitted).

Petitioner's case does not fit into the narrow violation of due process

carved out by *Hicks*.  The Supreme Court has subsequently explained its holding

in *Hicks*. *See Clemons v. Mississippi*, 494 U.S. 738, 746, 110 S. Ct. 1441, 108 L.

Ed. 2d 725 (1990) ("[W]hen state law creates for a defendant a liberty interest in

having a jury make particular findings, speculative appellate findings will not

suffice to protect that entitlement for due process purposes"); *Cabana v. Bullock*,

474 U.S. 376, 388 n.4, 106 S. Ct. 689, 88 L. Ed. 2d 704 (1986) ("In *Hicks*, we

held only that where state law creates for the defendant a liberty interest in

having the jury make particular findings, the Due Process Clause implies that

appellate findings do not suffice to protect that entitlement.") (*overruled on other*

*grounds by Pope v. Illinois*, 481 U.S. 497, 503 n.7, 107 S. Ct. 1918, 95 L. Ed. 2d

439 (1987)).  The *Hicks* case does not provide any general authority for a federal

habeas court to dispute a state's interpretation of its own laws. *Clemons*, 494

U.S. at 747; *Cabana*, 474 U.S. at 388 n.4.[8]

---

[8]   Similarly, the circuit courts have applied *Hicks* narrowly.  *See Hubbart v. Knapp*, 379 F.3d 773, 780 (9th Cir. 2004) ("state courts must generally comply with state laws in sentencing prisoners"), *cert. denied*, 543 U.S. 1071 (2005); *Walker v. Deeds*, 50 F.3d 670, 672 (9th Cir. 1995) ("the state's failure to abide by its procedures violated his due process rights"); *Dupuy v. Butler*, 837 F.2d 699, 703 (5th Cir. 1988) ("Later cases have interpreted the liberty interest recognized in *Hicks* as entitling the state criminal defendant to a sentencing decision *by the sentencing authority designated under state law*") (emphasis in original); *Carter v. Bowersox*, 265 F.3d 705, 715 (8th Cir. 2001) ("*Hicks* . . . represent[s] a rather narrow rule: some aspects of the sentencing process, created by state law, are so fundamental that the state must adhere to them in order to impose a valid sentence") (internal quotation marks and citation omitted), *cert. denied sub nom. Carter v. Leubbers*, 535 U.S. 999 (2002).

1    The Court of Appeal here determined that Petitioner validly waived a jury

2    trial on prior convictions under state law.  Petitioner's claim fails.

3              2.    **Ground Six**

4         In Ground Six, Petitioner argues that under *Blakely* he was entitled to a jury

5    trial on the issue of identity of the priors.  (Petition at 6D.)  As noted in Ground

6    Five, the California Court of Appeal correctly concluded that there is no federal

7    constitutional right to a jury trial for prior convictions.  (LD 20 at 6.)  In addition,

8    "nothing in *Blakely* prevents . . . a waiver."  (*Id.*)

9         Petitioner attempts to circumvent the holdings of *Blakely* and *Apprendi* by

10   arguing that "the fact of a prior conviction" (*Apprendi*, 530 U.S. at 490) does not

11   "logically include the identity of the defendant in the current case as the person

12   who suffered that conviction."  (Petition at 6D.)  Under California law, "the

13   question of whether or not the defendant has suffered the prior conviction shall be

14   tried by the jury," whereas "the question of whether the defendant is the person

15   who has suffered the prior conviction shall be tried by the court without a jury."

16   Cal. Penal Code § 1025(b) and (c).  Thus, California affords the right to a jury on

17   part of the proof of a prior conviction but not on the identity aspect.

18        There is no federal constitutional right to a jury trial on prior convictions.

19   *Blakely* made no such distinction between "fact" and "identity," nor is there any

20   federal case that makes such a distinction.  *See Davis v. Woodford*, 446 F.3d

21   957, 963 (9th Cir. 2006) ("The fact that Petitioner had a state statutory right to a

22   jury trial on his prior convictions does not avail him. The Constitution permits prior

23   convictions to be used to enhance a sentence, without being submitted to a jury,

24   so long as the convictions were themselves obtained in proceedings that required

25   the right to a jury trial and proof beyond a reasonable doubt.") (citations omitted).

26        Petitioner's claim fails.

27   ///

28   ///

19

**F.    GROUND SEVEN: Ineffective Assistance**

To succeed on a claim of ineffective assistance of trial counsel, Petitioner must demonstrate that his attorney's performance was deficient and that the deficiency prejudiced the defense. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Petitioner bears the burden of establishing both components. *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). Deficient performance is performance that is objectively unreasonable under prevailing professional norms. *Summerlin v. Schriro*, 427 F.3d 623, 629 (9th Cir. 2005) (citing *Strickland*, 466 U.S. at 688), *cert. denied*, 547 U.S. 1097 (2006). Prejudice "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993); *Williams*, 529 U.S. at 393 n.17.

To establish deficient performance, Petitioner must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *Lankford v. Arave*, 468 F.3d 578, 583 (9th Cir. 2006). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *Yarborough v. Gentry,* 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). Only if counsel's acts and omissions, viewed as of the time of counsel's conduct, were outside the "wide range" of professionally competent assistance, will Petitioner meet this initial burden. *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Strickland*, 466 U.S. at 690.

If Petitioner makes this showing, he must then establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the

20

proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams*,

529 U.S. at 391.  The errors must be "so serious as to deprive the defendant of a

fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *see also*

*Williams*, 529 U.S. at 393 n.17 ("counsel's deficient performance renders . . . the

proceeding fundamentally unfair").  However, "an analysis focusing solely on

mere outcome determination, without attention to whether the result of the

proceeding was fundamentally unfair or unreliable, is defective." *Lockhart*, 506

U.S. at 369 (footnote omitted).

However, a court need not determine whether counsel's performance was

deficient before determining whether the defendant suffered prejudice as the

result of the alleged deficiencies. *Strickland*, 466 U.S. at 697 ("If it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . .

. that course should be followed."); *Smith*, 528 U.S. at 286 n.14 (same).

After remand, at Petitioner's trial on his priors, a § 969b[9] packet was

admitted into evidence as Exhibit 1. (LD 3 at 3.)  Petitioner argues that hearsay

evidence in the probation report was used "to connect petitioner to the 969b

packet" and that his counsel's failure to object constituted ineffective assistance.

(Petition at 6E.)  According to Petitioner, had his counsel objected, there would

have been insufficient evidence to prove the priors because the quality of the

photographs in the packet was too poor, no forensic expert testified that it was

Petitioner's fingerprints in the packet, and nothing could be presumed from such

a common last name as Petitioner's. (*Id.*)  Petitioner does not claim *not* to be the

person convicted.

The California Court of Appeal rejected Petitioner's claim under *Strickland*.

(LD 20 at 3.)  The court declined to consider whether the probation report was

---

[9]  Cal. Penal Code § 969b provides that to establish prima facie evidence
of a prior conviction, "copies of records of any state penitentiary . . . in which such
person has been imprisoned . . . may be introduced" into evidence.

admissible and instead found no prejudice. (*Id.*) The trial court "expressly found that the strong resemblance between Green and the man in the photographs and other information in the section 969b packet established that they were the same person."[10] (*Id.* at 4.) Although the trial court said that the 969b packet "matches the probation report," the court found that "the record as a whole supports the conclusion that the court mentioned the probation report only after its decision had been made." (*Id.*) Even if the trial court relied on the probation report, there was no prejudice because the 969b packet "standing alone, constitutes substantial and persuasive evidence that Green was the person who suffered the prior convictions." (*Id.*) Petitioner's contention that the photographs were of too poor quality was rejected: "the trial court concluded otherwise. In addition, our review of the photographs shows a number of distinct facial features that would permit a reasonable trier of fact to conclude beyond a reasonable doubt that Green and the person in the photographs were the same man." (*Id.*) The Court of Appeal also rejected Petitioner's contentions about his common name and his physical characteristics because the trial court used those, not as factors in isolation, but cumulative factors that ultimately persuaded the court that Petitioner was the same person who had been convicted. (*Id.* at 5.)

The Court of Appeal's decision was not unreasonable. The court addressed each of Petitioner's objections and nonetheless found, not unreasonably, sufficient evidence in the 969b packet for the trial court to find the prior conviction allegations true.

This Court accords state "factual findings a presumption of correctness." *See Tinsley v. Borg*, 895 F.2d 520, 526 (9th Cir. 1990), *cert. denied*, 498 U.S.

---

[10]   The trial court stated "I have reviewed Exhibit 1, and it does contain a photograph which resembles very strongly the defendant. It appears to me to be the same person. [¶] There is other identification in the form of height, weight, age, birth date, the C I I number, the dates of the offenses, the chronological history, which matches the probation report prepared in this case." (LD 3 at 5.)

1   1091 (1991).  This is true for both state trial court factual findings as well as

2   appellate findings.  *See Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir.), *cert.*

3   *denied*, 537 U.S. 981 (2002) (citation omitted).  Nor has Petitioner offered any

4   evidence, let alone clear and convincing evidence, to rebut the factual findings of

5   the state courts.  *See Miller-El*, 537 U.S. at 340.

6       Petitioner's claim fails.

7                                    **V.**

8                            **RECOMMENDATION**

9       For the reasons discussed above, it is recommended that the District Court

10  issue an Order (1) adopting this Report and Recommendation; and (2) directing

11  that judgment be entered denying the Petition and dismissing this action with

12  prejudice.

13

14  DATED: August 29, 2007

15                                    ALICIA G. ROSENBERG
                                      United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file Objections as provided in the Local Rules Governing Duties of Magistrate Judges, and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.